IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Melissa McGurren,** | ) |
|        **Plaintiff,** | ) |
| | ) No. 21 C 6287 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| **Hubbard Radio Chicago, LLC,** | ) |
|        **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Defendant's motion to dismiss [13] is granted. Plaintiff states in a footnote in her response brief that she will seek leave to file an amended complaint to allege a violation of 740 ILCS 145/2, which provides that "[i]t shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely . . . ." 740 ILCS 145/2. Defendant asserts that any such amendment would be futile. The Court grants Plaintiff 14 days to respond to Defendant's futility argument; Defendant has 14 days to reply. The Court will rule electronically. The Court will rule on the motion to strike allegations in the complaint [15], if necessary, when it addresses the proposed amendment.

## STATEMENT

On December 30, 2020, Melissa McGurren ("Plaintiff") filed a charge of discrimination with the EEOC, alleging harassment by a coworker, Eric Ferguson. (Compl., Dkt. # 1-2, ¶¶ 9, 11.) On October 2, 2021, Jeff England, the Vice-President and Market Manager at Hubbard Radio Chicago, LLC ("Defendant"), Plaintiff's former employer, sent an email to Defendant's employees, stating in part as follows:

> Good afternoon, I want you to hear this from me first. Later today, we are anticipating another round of media stories about Eric[] [Ferguson's] situation – including the contents of a complaint made by Melissa McGurren to the EEOC. This is not a new development, and we've thoroughly investigated this matter previously. Suffice it to say that we do not agree with Melissa's characterization of events, but we are committed to following the appropriate process and not litigating this matter in the public or the press. We continue to wish Melissa well in her endeavors.
>
> We have made the decision that Eric will not be on air through October. We take these allegations seriously and we are confident in the results of multiple investigations we have initiated. But we also owe it to ourselves and our listeners to have a deliberate and thoughtful process about our path forward, and candidly we are not there yet.

(*Id*. ¶¶ 21-25.)[1] According to Plaintiff, the statement that "[the contents of Plaintiff's EEOC Charge against Hubbard] is not a new development, and we've thoroughly investigated this matter previously. Suffice it to say that we do not agree with Melissa's characterization of events" constitutes defamation *per se* because it "falsely calls [her] a liar and attacks [her] integrity and credibility." (*Id*. ¶ 24.)

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court may grant if Plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him or her." *Brennan v. Kadner*, 814 N.E.2d 951, 956 (Ill. App. Ct. 2004). "A statement is defamatory *per se* if the words used are so obviously and materially harmful to the plaintiff that injury to the plaintiff's reputation may be presumed." *Id*. at 957. Accordingly, if a statement is found to be defamatory *per se*, damages are presumed and "the plaintiff need not plead or prove actual damage to his or her reputation to recover." *Moore v. PETA, Inc*., 932 N.E.2d 448, 455 (Ill. App. Ct. 2010).

"Illinois recognizes five categories of defamatory statements that are considered actionable *per se:* (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication." *Brennan,* 814 N.E.2d at 957. The two categories of defamation *per se* that are relevant here are the third and fourth -- those imputing an inability to perform or want of integrity in the discharge of duties of office or employment, and those that prejudice a party, or impute lack of ability, in his or her trade, profession, or business. "Statements that have been deemed defamatory *per se* by Illinois courts under the third or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (emphasis in original).

Defendant's statement that it has investigated the matter and does not agree with Plaintiff's characterization of events is not related to Plaintiff's job performance; it comments neither on her ability as a radio personality nor indicates that she did "something bad" in the course of carrying out her job. *See id*. at 857 (concluding that the defendant's statement that plaintiff, a radio station sales manager, had posted obscene images on the station's website out of retaliation for being fired did not constitute defamation *per se* because the statement did not "disparage [plaintiff's] skills as a sales manager"). Plaintiff asserts that "[i]f [she] is lying about her experiences as a Hubbard employee, then she had a 'want of integrity in the discharge of her duties' as an employee; and to call [her] a liar about her workplace experience is to prejudice her in 'her trade, profession' as an on-air personality in radio." (Pl.'s Resp., Dkt. # 21, at 7.) The Court disagrees. An employee's post-separation report about events that occurred on the job is distinct

---

[1] The email was published in an online media blog on October 5, 2021. (*Id.*)

2

from the actual discharge of that employee's duties; an employer's comments on the veracity of the report do not merge the two. Nor does the employer's disagreement with the report of events prejudice the employee in her trade or profession. Assuming *arguendo* that Plaintiff's interpretation of the email – that England called her a liar -- is accurate, it is properly construed as a statement regarding Plaintiff's personal, not professional, integrity, which does not satisfy the requirements for defamation *per se*. *See Jaros v. Vill. of Downers Grove*, -- N.E.2d ---, 2020 WL 3468088, at *14 (Ill. App. Ct. June 25, 2020) (stating that an "attack on *personal* integrity becomes an actionable attack on *professional* integrity only when the statement is directly related to job skills or function") (emphasis in original). Integrity is not a quality fundamental to being an on-air radio personality. *See, e.g., Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013) ("When the subject of the false statements is employed in an occupation (schoolteacher for example) that requires certain personal traits, such as trustworthiness, accusations of being a scam artist or an inveterate liar could lead to unemployment"); *Cody*, 409 F.3d at 858 ("We see no reason to believe that managing the sales department of a radio station requires a degree of integrity above and beyond that required for any job."); *Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. App. Ct. 1984) (statements accusing the plaintiff-nurse of personality conflicts with hospital colleagues, which involved the plaintiff's "name-calling" and use of "epithets," were not defamatory *per se* because they did not "impute want of integrity or capacity to plaintiff in her profession" as a nurse). The Court finds that the relevant language in England's email does not fall within any of the categories of defamation *per se*.

In any event, the statement is capable of innocent construction. "The innocent construction rule requires [the Court] to adopt an innocent construction of the allegedly defamatory statements if such an interpretation is reasonable." *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441, 450 (Ill. App. Ct. 1999). "Courts must . . . interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable [listener]." *Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828, 839 (N.D. Ill. 2018) (internal citation marks and quotation omitted). Here, while Plaintiff interprets the statement as indicating that she is a liar, the statement is reasonably and appropriately understood as Defendant's position on the legal matter at hand. *See Owen v. Carr*, 478 N.E.2d 658, 662 (Ill. App. Ct. 1985) ("The meaning given allegedly defamatory words is not necessarily plaintiff's interpretation of them.") Taken in context, a reasonable reader would not understand the internal email by England to have been made for the purpose of causing harm to Plaintiff's reputation or lowering her standing in the community, but rather to acknowledge the existence of the EEOC claim, convey to the radio station's employees that the matter is being investigated, and indicate that the radio station does not agree with Plaintiff's interpretation. Because the statement is subject to innocent construction, it is not defamatory *per se*. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006) ("[A] statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions . . . .") (citation omitted).

This finding leads the Court to the final reason for granting the motion to dismiss – the statement is not defamatory because it is an opinion regarding Plaintiff's EEOC claim. "Opinions that do not misstate actual facts are protected by the First Amendment and thus non-actionable." *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). "Illinois courts consider the following three factors in differentiating between factual assertions and opinions: "(1) whether

3

the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Id*. "Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements." *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 832 (7th Cir. 2019). England's internal email is an informational communication to Plaintiff's former coworkers and Defendant's current employees. It acknowledges the existence of Plaintiff's pending EEOC claim, does not discuss particular facts, and simply indicates that the station has conducted its own investigations and does not agree with Plaintiff's characterization of events – a classic statement of opinion. *Cf. Owen v. Carr*, 497 N.E.2d 1145, 1148 (Ill. 1986) (one attorney's statement that another attorney's complaint against a judge was made to "deliberately . . . intimidate" the judge "may reasonably be viewed as an expression of [the attorney's] opinion regarding his client's allegations against [the plaintiff]").

Plaintiff argues that "when [Defendant] made its published statement, it had ample notice that Ferguson was a serial abuser of women" and thus Plaintiff's "allegations establish [that Defendant] knowingly published false information when it claimed it did 'not agree' with [Plaintiff's] 'characterization of the events' described in her EEOC charge following a 'thorough[]' investigation." (Pl.'s Resp., Dkt. # 21, at 4-5.) This far-reaching argument finds no support in the law. Plaintiff's EEOC allegations are just that – allegations, not verifiable fact. They are, by definition, Plaintiff's version of events that have purportedly occurred. To argue that an opposing party's stated disagreement (made internally) with a claimant's version of events constitutes defamation turns the entire adversarial process on its head. *See Brennan*, 814 N.E.2d at 958 (stating that "where potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions . . . ," language "can well assume the character of statements of opinion") (citation and internal quotation marks omitted). Moreover, the email does not discuss any particular factual allegations, and the Court disagrees with Plaintiff's position that by referring generally to Plaintiff's EEOC Charge in his email, England was specifically incorporating Plaintiff's numerous factual allegations and branding Plaintiff a "liar" as to each. Because the statement in the email is an opinion, Plaintiff's defamation *per se* claim fails.

For all of these reasons, Defendant's motion to dismiss [13] is granted. Plaintiff states in a footnote in her response brief that she will seek leave to file an amended complaint to allege a violation of 740 ILCS 145/2, which provides that "[i]t shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely . . . ." 740 ILCS 145/2. Defendant asserts that any such amendment would be futile. The Court grants Plaintiff 14 days to respond to Defendant's futility argument; Defendant has 14 days to reply. The Court will rule electronically.

**Date**: March 1, 2022

**Ronald A. Guzmán**
**United States District Judge**