# EXHIBIT 1

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **MELISSA MCGURREN,**<br><br>  Claimant,<br><br>  vs.<br><br>**HUBBARD RADIO CHICAGO, LLC**<br><br>  Respondent. | |

## **DEMAND FOR ARBITRATION**

Pursuant to the Employment Rules of the American Arbitration Association, Claimant Melissa McGurren ("McGurren") asserts claims in arbitration against Hubbard Radio Chicago, LLC ("Hubbard Radio") for its violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the Illinois Human Rights Act ("IHRA"); the American Disabilities Act ("ADA"; the Equal Pay Act ("EPA"); common law defamation; and common law intentional infliction of emotional distress.

## **PARTIES**

1.  Claimant Melissa McGurren, a female who resides in Riverside, Illinois, was, until on or about December 16, 2020, the co-host of WTMX-FM's ("the Mix's" or "the Station's") top rated morning show entitled "Eric in the Morning with Melissa and Whip."

2.     Respondent Hubbard Radio Chicago, LLC is a Delaware limited liability company and operator of radio station WTMX-FM, having its principal place of business in Chicago, Illinois.

## AGREEMENT TO ARBITRATE

3.     On October 4, 2016, the parties entered into the Employment Agreement attached as **Exhibit 1**.  Section 6, entitled "Arbitration Agreement," states in part: "…Employer and Employee agree that all claims and disputes between Employer and Employee shall be decided by arbitration before a single arbitrator in accordance with the Employment Rules of the American Arbitration Association ("AAA") then in effect, unless Employer and Employee both agree otherwise in writing."  Exhibit 1 at § 6.1.

4.     Section 6.4.2 of this Agreement provides: "…Employer will pay all AAA administrative charges and filing fees for both sides, *LESS* the amount of the federal district court complaint filing fee in the locale where the arbitration is venue, which amount shall be paid by Employee to the AAA."  Exhibit 1 at § 6.1.2(b).

5.     McGurren relies on Section 6.4.2 and tenders the filing fee for a complaint in the United States District Court for the Northern District of Illinois.

## BACKGROUND

6.     Claimant Melissa McGurren has worked in the radio industry for her whole career.  In her 22-year career at WTMX 101.9-FM ("the Station" or "The Mix") that is now owned by Respondent Hubbard Radio Chicago, LLC ("Hubbard Radio" or

"the Company"), McGurren rose from traffic reporter to co-host of the Station's top rated morning show called "Eric in the Morning with Melissa and Whip."

7.      "Eric in the Morning with Melissa and Whip" ("the morning show") is the most popular show on The Mix and is often the top-rated morning radio show in Chicago among listeners between the ages of 25 and 54, which, for advertisers, is the key demographic segment.  Eric Ferguson ("Ferguson") is the *de facto* boss of the morning show and was McGurren's supervisor in this respect.

8.      Because he is the station's most successful on-the-air personality, the Mix, and its operator Hubbard Radio, treats Ferguson as through he is a "sacred cow" the station must never offend.  Unfortunately, Ferguson has abused his privileged status.  Ferguson is a serial abuser of women, and, for many years, the management of the Station has protected Ferguson, and they have allowed him to continue perpetrating his misconduct that goes far beyond the limits of decency despite ample notice from McGurren and many of her co-workers at the Station that Ferguson's behavior was unlawful.  Ferguson's misconduct, and Hubbard Radio's knowing unwillingness to stop it, form the basis of these claims.

9.      On December 30, 2020, Melissa McGurren filed a charge of discrimination with the EEOC, attached as **Exhibit 2**.

10.     On May 26, 2021, the EEOC issued notice of right to sue to McGurren, attached as **Exhibit 3**.  McGurren's claims are timely under this right to sue.

<u>**TITLE VII CLAIMS**</u>

11.     In support of her Title VII claims in arbitration for hostile work environment, retaliation, and disparate treatment, McGurren incorporates her charge in the EEOC including her Statement of Particulars.

## ILLINOIS HUMAN RIGHTS ACT CLAIMS

12.     In support of her IHRA claims in arbitration for hostile work environment, retaliation, and disparate treatment, McGurren incorporates her charge in the EEOC including her Statement of Particulars.

## AMERICANS WITH DISABILITIES ACT CLAIM

13.     In support of her ADA claims in arbitration, McGurren incorporates her charge in the EEOC including her Statement of Particulars.

## EQUAL PAY ACT CLAIM

14.     McGurren, a female, was intentionally paid less than men in similar or comparable positions who were doing the same or substantially equal work in violation of the Equal Pay Act ("EPA"), 29 U.S.C.A. § 206(d).  *See* Exhibit 2 at ¶20.

15.     Brian Paruch, who went by the nickname "Whip" on "Eric in the Morning with Melissa and Whip," was paid the same or nearly the same as McGurren by the Company despite working nearly 10 (ten) years less than McGurren and despite being less popular (in terms of social media followers) than McGurren in the eyes of the Morning show's fanbase.

16.     These facts will be born out in discovery.

## COMMON LAW DEFAMATION PER SE

17.     On or about December 16, 2020, Hubbard Radio released a statement that said, "The Mix is sad to announce that after 22 years with the station, Melissa McGurren was offered a contract extension which much to our surprise she declined." This statement was copied and published in an article written by Robert Feder, a Chicago journalist that covers the media.  A copy of the Feder article, dated December 16, 2020, is attached as **Exhibit 4**.

18.     On or about the same day, both Eric Ferguson and Jeff England (vice president and market manager at Hubbard Radio) made statements to Feder, commenting on McGurren's departure from The Mix.  In the Feder article (Exhibit 4):

> a. Ferguson is quoted by Feder as saying: "I was surprised and disappointed when I heard the news, but I think it is important to be supportive when someone chooses to do something different in life."

> b. England is quoted by Feder as saying; "Our plans for the future of 'Eric in the Morning' definitely included Melissa.  We were disappointed by her decision not to renew her contract, but also knew that this year has led all of us to assess our lives in different ways …".

19.     Hubbard Radio's statement, Ferguson's comment, and England's comment were intended to paint McGurren in a false light.

20.     Hubbard Radio's statement, Ferguson's comment, and England's comment, all made on or about December 15, 2020, were made despite Hubbard Radio's and the individual's knowledge that - by December 3, 2020, at the latest -

McGurren would not return to the Station unless she had adequate assurance there would be no further harassment, hostile work environment, or any other unlawful conduct from Ferguson. *See* Exhibit 2 at ¶14.

21.     Hubbard Radio, Ferguson, and England made their quoted statements with the intent that Feder (and others) publish their statements to the broadest audience possible.

22.     Hubbard Radio, Ferguson, and England made their quoted statements to Feder (and others) with the intent of continuing to cover-up Ferguson's serial harassment and the station's tacit approval of Ferguson's conduct, revealed by the Station's failure to stop it, which they knew to be the true reason why McGurren was leaving the station.

23.     Hubbard Radio, Ferguson, and England made their quoted statements to Feder (and others) with the intent of presenting McGurren in a false light to the public as to the reasons why she was leaving the station and to damage McGurren's professional reputation in the radio industry.

24.     Hubbard Radio, Ferguson, and England - through their statements - purposefully intended to imply and did imply that McGurren left "The Mix" for reasons unrelated to the rampant and insidious serial harassment perpetrated by Ferguson and condoned by England.  By insinuating that McGurren's refusal to renew her contract "surprised" Ferguson or "disappointed" England, these Defendants were painting McGurren in a false light - one in which she was not forced

to leave "The Mix" due to England's, Ferguson's, and the station's management's refusal to stop Ferguson's continued harassment.

25.     Hubbard Radio's, Ferguson's, and England's statements were defamatory *per se* because the statements injured McGurren in her trade or occupation.  Specifically, but without limitation:

    a.  By stating Hubbard Radio was "surprised" McGurren declined the contract extension, Hubbard Radio implied that (1) it was not aware of the many accusations and reports of sexual harassment McGurren made to the Mix's and Hubbard Radio's management and human resources department; and (2) that Hubbard Radio's unwillingness to do anything to remedy Ferguson's harassment, the hostile working environment, and the retaliation had nothing to do with McGurren's departure. McGurren's fan base, which takes years to cultivate, was left with the impression McGurren abandoned them because of a contract dispute and/or because she wanted more money from the Station, and not that McGurren was forced out due to workplace harassment.

    b.  By stating he "was surprised and disappointed when [he] heard the news, but [he] think[s] it is important to be supportive when someone chooses to do something different in life," Ferguson implied that (1) he was not aware of the many accusations and reports of sexual harassment McGurren made to him and to other managers, and (2) that McGurren was choosing to do something different in life, *i.e.,* leave radio.

McGurren's fan base, which takes years to cultivate, was left with the impression that McGurren left radio altogether (a lie) because of (without limitation) McGurren's unhappiness with her contract, as opposed to the truth that Ferguson's conduct (and the Company's refusal to do anything about Ferguson's conduct) forced McGurren to leave the Station.

c. By stating, "our plans for the future of 'Eric in the Morning' definitely included Melissa … We were disappointed by her decision not to renew her contract, but also knew that this year has led all of us to assess our lives in different ways…," England similarly implies that McGurren left because she wanted to leave radio (a lie) because of (without limitation) McGurren's unhappiness with her contract, and not that England's (and other management's) refusal to do anything about Ferguson's conduct that McGurren repeatedly complained of. McGurren's listeners and fans were left with the impression that McGurren abandoned them because (without limitation) the Station was not paying her enough money, and not that England's inaction in stopping Ferguson's sexual harassment drove her away.

26. Because Hubbard Radio's, Ferguson's, and England's statements are defamation *per se*, McGurren is presumptively injured and damaged.

27. In making these statements, Hubbard Radio, Ferguson, and England:

8

a. Intended to injure McGurren personally and professionally, making it seem like she left for personal or financial reasons as opposed to being forced away;

b. Exhibited actual malice as all three were aware of the real reason McGurren chose not to resign her contract: Ferguson's unchecked serial harassment; and

c. Directly and proximately injured McGurren including actual damages to her personal and professional reputation and future earning potential in amounts to be determined at hearing, and actual damages for emotional injuries and physical ailments caused by emotional stress.

## **COMMON LAW DEFAMATION PER QUOD**

28. McGurren incorporates ¶¶17-27 as though stated herein.

29. The statements made by Hubbard Radio, Ferguson, and England damaged McGurren's reputation.

30. Members of McGurren's fan base who viewed the statements were left with the impression that McGurren left The Mix for untrue reasons as intended by Hubbard Radio, Ferguson, and England, such as (without limitation) McGurren's greed in contract negotiations or The Mix deciding to replace McGurren with another female announcer.

31. These reasons are a far cry from the true reasons for McGurren's exit: Hubbard Radio's and the Station's unwillingness to put a stop to Ferguson's harassment.

32.     McGurren has been injured as the direct and proximate result of the defamatory statements made by Hubbard Radio, Ferguson, and England. Her injury includes (without limitation) damages to her professional reputation, damages to her future earning potential, and actual damages for emotional injuries and physical ailment caused by emotional stress - all in amounts that will be determined at hearing.

## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

33.     Eric Ferguson, a very popular radio personality with a large audience, repeatedly harassed McGurren, both on air for all the listeners and consumers of the Morning Show's content (including content on social media) and off air in front of McGurren's co-workers and colleagues, for years. *See* Exhibit 2 at ¶¶ 3, 8-11.

34.     Ferguson's conduct constituting intentional infliction of emotional distress included more than just conduct related to his sexual discrimination of McGurren, it also included emotional and psychological torment. On November 24, 2020, McGurren emailed the Station's human resources representative, who also worked for Hubbard Radio, a comprehensive list describing Ferguson's harassment that included far more than just harassment based on sex. *See* Exhibit 2 at ¶11 (and the exhibit referenced therein). As McGurren stated in the November 24, 2020, email, "I've been mentally and verbally abused, harassed, put into tears, yelled at, belittled, ignored, mocked and my job has been threatened multiple times." *Id*.

35.     In addition, and not included in McGurren's email of examples that was sent to Hubbard Radio on November 24, 2020:

a. On December 9, 2019, Ferguson, whole broadcasting on air, berated McGurren for showing up to work in a good mood while he was in a bad mood. Ferguson then forced McGurren to walk to her car, turnaround, and walk back to the Station so she could start her day over again. Ferguson ordered the Mix's social media team to film McGurren while she was making this walk of shame, and to post the video to social media. Ferguson's conduct this day humiliated McGurren, as Ferguson intended. The Station eventually removed the video from social media after the post generated a negative reaction from the Morning Show's fans;

b. Ferguson admonished McGurren for socializing with fellow Morning Show co-host Brian Paruch (known as "Whip") outside of the studio. Ferguson went so far as calling McGurren and Paruch into his office to order McGurren and Paruch not to each lunch together or talk to each other when leaving the Station;

c. Ferguson harassed McGurren about her clothes, often telling her what to wear or telling McGurren he did not like her outfits;

d. Ferguson repeatedly threatened McGurren with termination over the course of her employment, including (without limitation) threatening to have McGurren fired if she did not move from the suburbs to the city of Chicago (which McGurren did, fearing Ferguson would act on his threat), and threatening to fire McGurren when she did not attend a

Company Christmas Party that conflicted with her son's ninth birthday party; and

e. Ferguson publicly berated McGurren by calling her lazy or stupid, including (without limitation) once while in front of McGurren's co-workers, he told McGurren, "You really are a fish in a fishbowl"; accusing her of not making work her priority or of not caring about work; and for other minor "infractions" in Ferguson's mind as stated in McGurren's email to HR (Exhibit 2).

36. As the lead on the "Eric in the Morning" radio show, Ferguson also amplified his harassment of McGurren through broadcasting his demeaning insults to the show's listeners or posting, on social media, images or videos (over McGurren's objections) that ridiculed McGurren. These harassing comments were heard and viewed by the Morning show's many fans.

37. Ferguson was aware that his conduct caused McGurren severe emotional distress. McGurren complained to Ferguson about it several times, but Ferguson not only ignored McGurren, but he also would not allow McGurren to speak when she tried to talk to him about her concerns. Ferguson would do this by raising his hand in front of her face - "to shush her" as Ferguson described this gesture - or by yelling at McGurren that (in words or substance) she did not know what she was talking about. Ferguson refused to listen to McGurren, and he did not alter his conduct. Ferguson was also aware that McGurren complained to management, including Jeff England and Jimmy Steal, Vice President of Brand and Content at

Hubbard Radio. Ferguson knew his conduct - much of which was broadcasted to McGurren's fans - was causing McGurren severe emotional distress yet did not stop.

38. Ferguson's conduct caused McGurren to suffer severe emotional distress. His conduct rose to such a level to render her place of work unbearable, forcing her to leave a job she loved and excelled in. McGurren also suffers severe emotional distress that has manifested in physical symptoms such as depression, anxiety, insomnia, bouts of crying, and panic attacks. McGurren has sought treatment through therapy as a result.

39. A reasonable trier of fact would conclude that Ferguson's conduct - actively and continuously subjecting McGurren to a hostile work environment through constant harassment, ridiculing McGurren on-air to the show's many listeners, and feigning surprise at McGurren's exit while knowing that his conduct was the cause of McGurren's departure - was outrageous and intolerable in a civilized community.

40. Hubbard Radio is liable for the tortious acts of its agent, Eric Ferguson. Furthermore, Hubbard Radio was aware of Ferguson's harassment of McGurren and did nothing to prevent it.

41. Ferguson's conduct and Hubbard Radio's failure to stop it were intentional. Actual damages in an amount sufficient to redress McGurren's emotional distress are necessary, and punitive damages should be awarded to punish Hubbard Radio for its behavior and to deter future misconduct.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, on each of her claims, separately and combined, Claimant Melissa McGurren respectfully requests that the Arbitrator enter an Award in Claimant's favor and against Respondent Hubbard Radio, awarding:

A. All damages, equitable remedies, costs, disbursements, attorney fees and other forms of relief that are available under the law, including:

1. Back pay, including wages and benefits lost, as a result of Respondent's discrimination in an amount to be determined;

2. Front pay in an amount to be determined.

B. Other compensatory damages to the fullest extent permitted by law.

C. Punitive damages in an amount sufficient to punish Hubbard Radio and deter others from like misconduct;

D. Liquidated damages (for McGurren's claim under the Equal Pay Act); and

E. Such other and further relief the Arbitrator deems just and proper.


Dated: June 24, 2021                          Respectfully submitted,

                                              **Melissa McGurren**

                                      By:     */s/ Carmen D. Caruso*

Carmen D. Caruso - cdc@cdcaruso.com
William B. Whitner - wbw@cdcaruso.com
77 West Washington St., Ste. 1900
Chicago, IL 60602
T: 312-626-1160

# Exhibit 1

McGurren Arbitration Demand

# Exhibit
# <u>Intentionally Removed</u>

# **Exhibit 2**

McGurren Arbitration Demand

Received by EEOC CHI 12/30/2020

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | 440-2021-01572 |

## U.S. Equal Employment Opportunity Commission

| State or local Agency, if any | S.S. No. |
|---|---|

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Melissa McGurren | 773-620-6354 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 430 Kent Road | Riverside, Illinois 60546 | 10/7/1969 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Hubbard Radio Chicago, LLC | 500+ | 312-946-1019 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 130 East Randolph, Ste. 2700, Chicago, Illinois, 60601 | | Cook |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA)   LATEST (ALL) |
|---|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] AGE  [X] RETALIATION  [ ] NATIONAL ORIGIN  [X] DISABILITY  [X] Hostile Work Environment | 2005   Present   [X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

See attached statement of particulars.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 12 / 30 / 2020 | |
| Date      *Melissa McGurren* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |
| Charging Party *(Signature)* | *(Day, month, and year)* |

EEOC FORM 5 (Test 10/94)

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Received by EEOC - CDO 12/30/2020

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 1 of 8

My name is Melissa McGurren. I live in Riverside, Illinois, and I am a Caucasian female. For the past 23 years, I have worked at the radio station WTMX-FM ("the Station" or "The Mix") that is owned by Hubbard Radio Chicago, LLC ("the Company"). Most recently, I was an announcer on "The Mix" along with my co-host Eric Ferguson.

I contend that Eric Ferguson is a serial abuser of women and that for many years, the management of The Mix has protected Ferguson in allowing him to continue in perpetrating his misconduct that goes far beyond the limits of decency despite ample notice from me and many of my co-workers that Ferguson's behavior is unlawful. I specifically charge that in violation of Title VII of the Civil Rights Act of 1964, as amended and the Illinois Human Rights Act:

A. I have suffered continuing discrimination because of my gender. On information and belief, this includes being underpaid in comparison to men and to women that Ferguson was not retaliating against. It also includes being subjected to a hostile work environment and retaliation that men were not subjected to.

B. I have been forced to endure an unbearable hostile work environment.

C. I have suffered unlawful retaliation.

D. I have suffered constructive termination of my employment as a radio personality by The Mix.

E. I have suffered loss of income both historically and prospectively.

F. I have suffered emotional distress and related physical suffering.

Separately, during the 2020 COVID-19 pandemic, I also suffered a violation of my rights under the American Disabilities Act, as discussed in paragraph 4.

In particular:

1. "The Mix" is an adult contemporary radio station on the station WTMX 101.9-FM. I was the co-host of the Mix's top rated morning show entitled "Eric in the Morning with Melissa and Whip".

2. My former co-host, Eric Ferguson, is a serial sexual predator and abuser of women, and was the primary contributor to the hostile work environment I endured. Ferguson, because of his starring role in the "Eric in the Morning" show, holds great influence at the Station over the careers of his co-workers including me.

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Received by EEOC - CDO 12/30/2020

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 2 of 8

For many years, Ferguson has grossly abused his power, and his conduct was the major reason the Station became a hostile working environment.

3.  Over the years Ferguson repeatedly made disparaging comments and otherwise harassed me based on my gender creating a hostile working environment. Ferguson's conduct as described in these sub-paragraphs became worse over the years; and became unbearable in 2019 and 2020 leading to my constructive termination in November and December 2020.  Without limitation:

a)  From 2005-2020, Ferguson frequently made derogatory and insulting comments on my physical appearance, including comments related to my breasts, my nipples, and my butt.  He made these comments on the air, and off the air in the presence of my co-workers and me.  He knowingly insulted me, leaving me traumatized and frozen with fear to be in his presence.

b)  In or around April 2011, Ferguson coerced me to wear a bikini and get a spray tan at work, and Ferguson then posted (or caused a video to be posted) to Social Media despite my pleas to not do so.  The coercion was that if I did not do what Ferguson was commanding, I risked losing my job. I succumbed to his pressure, and because of the Social Media post, I received many unwanted sexual comments from men on social media.

c)  Often between the years 2009-2020, Ferguson made harassing comments about me leaving the broadcasting studio to go to the bathroom to deal with feminine issues.

d)  In or about 2019, while broadcasting on-air, Ferguson accused me of having hot flashes in a demeaning and condescending tone.

e)  In or about 2019, while broadcasting on-air, Ferguson ridiculed my outfit (a leopard print sweater with my hair styled in a bun) by saying I looked like Ivana Trump, a woman in her 70s (about twenty years older than me).  He then, over my objection, had someone take a picture of me and post it to social media asking viewers to vote on whether we looked alike.  His ridicule continued off-air and he repeated this type of harassment on other occasions.

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Received by EEOC - CDO 12/30/2020

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 3 of 8

f) Between 2002 and 2006, Ferguson caused a social media person at the Station to take a picture of my medication at my personal desk and post it to social media despite my vocal objection. This was a gross invasion of my privacy.

g) Ferguson would yell at, harass, and/or demean me (often on-air while broadcasting) for doing things like clearing my throat, walking in to the studio as a song was ending, misunderstanding something Ferguson said on air, or for simply talking in the studio while we were off-air. This occurred many times since 2010 and became worse in 2019 and 2020.

h) In May 2019, Ferguson also ridiculed my boyfriend on air, something he did not do to anyone else: not with men (as to their significant others) or to other women that did not make it clear, as did I, that I found his behavior intolerable.

i) Beginning in January 2019 and continuing through 2020, Ferguson (who had total control of the morning show), replaced me on "bits" or segments of the show in punishment for complaining about him (the retaliation against me is further discussed below). In early March 2020, during the Company retreat in Mexico, Ferguson publicly ridiculed my clothing and appearance throughout the trip. For example, he ridiculed a bathing suit I wore, which had long sleeves, by stating in front of a crowd of my co-workers, and fans, that I looked like an old lady. Similarly, he ridiculed me for a red jumpsuit I wore at a morning broadcast, and, again, this was in public in front of my co-workers.

4. After the COVID-19 pandemic caused many businesses to have employees work from home, Ferguson pressured the morning show on air staff to work from the office. Due to my asthma and other medical issues, I am considered high risk to COVID-19. I requested that (if I had to come to the studio) I work in a studio directly across from Ferguson with a window separating the two of us. This set up worked, but Ferguson, while on air, would ridicule, complain about, and/or harass me for not working in the same studio as him. In June 2020, I went back into the studio to make him stop his harassment, even though I felt very unsafe doing so. Ferguson's motives in so insisting were to punish me, as opposed to a legitimate business reason. Separately, this incident violated my rights under the Americans With Disabilities Act as I requested reasonable accommodations that my employer

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Received by EEOC - CDO 12/30/2020

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 4 of 8

was willing to provide but then allowed Ferguson to pressure me into working in the same room, without adequate protection against COVID-19.

5.     On multiple occasions from 2005 through 2020, Ferguson (who is a married man) would frequently and inappropriately touch many younger female employees, or sometimes younger female listeners, at company events in Chicago or abroad in Mexico during Company retreats.[1] Ferguson engaged in the conduct alleged in this paragraph in front of me and other co-workers. Unmistakably, Ferguson flaunted his power over women in ways intentionally demeaning to all women and this was part of the hostile work environment

6.     Over the years, I repeatedly brought my substantial objections to Ferguson's behavior to Station management and my superiors but no one in a position of authority did anything to cause Ferguson to change his terrible behavior.  Without limitation:

a)  On dozens of occasions from 2010 to 2018, when Mary Ellen Kachinske was the Station's program director, I repeatedly complained to Kachinske about Ferguson's inappropriate behavior and how his conduct created a hostile working environment.  In response, Kachinske (who left the Station in 2018) admitted she wanted Ferguson to behave appropriately and professionally but stated on numerous occasions that nothing could be done because of Ferguson's importance to the Station, as higher management would not allow Kachinske to adequately manage Ferguson.

b)  I also spoke to a former radio host that worked alongside Ferguson at the Station.[2]  This radio personality and I had hundreds of conversations about Ferguson's inappropriate behavior and the hostile working environment Ferguson's conduct created between 2006 and 2017.  Furthermore, I knew that she had complained, for both of us, to (without limitation) Greg Solk (the program director before Kachinske) and Kachinske. Solk, like Kachinske, did nothing in response to the complaints. Furthermore, I witnessed Ferguson berate, belittle, and ignore this other host on and off the air in retaliation for her complaints about him.

---

[1] I can name some of these women but do not do so here in respect of their privacy.
[2]  See Footnote One.

c) Starting in or about April 2019, I spoke over ten times to Jimmy Steal, the Station's program director that replaced Kachinske (and who now has a larger title). These conversations began as early as April 2019, four months after Steal first arrived, and continued into 2020. When I first spoke to Steal, he was new to the Station and I hoped he would make immediate changes when I brought my concerns about Ferguson's conduct to him. I was disappointed, when, after first talking to Steal, nothing was done. In response to my complaints, Steal would tell me to brush off Ferguson's inappropriate and harassing behaviors by saying things like "that's just the way [Ferguson] is and all radio genius's act like that" or asking me why I let Ferguson bother me. After repeated conversations between 2018 and 2020 - which largely took place in his office or over the phone, Steal took no action to remedy the hostile work environment caused by Ferguson. Steal's comments exacerbated my stress as he tried to convince me I needed to change and not Ferguson. As a result I became more anxious because the program director wasn't willing to help.

d) From 2016 to 2020, I also spoke often to John Swanson (the Station producer), Dave Karwowski (the Station marketing director), and Brian Paruch (the Station on air morning news man) about my complaints about Ferguson. These men knew I believed I was subject to an unlawful hostile working environment and disparate treatment.

e) I know that Swanson, Karwowski and Paruch also spoke to Program Director Jimmy Steal (as did I) about my complaints and the hostile work environment created by Ferguson; and I know that Drew Horowitz (the Station Manager) knew of Ferguson's inappropriate behavior. None of these men intervened to stop it.

f) Jeff England, VP and market manager for Hubbard Radio's three stations including The Mix, was also aware of Ferguson's inappropriate behavior and did nothing to stop it.

g) Ferguson's discriminatory, harassing, demeaning and hostile behavior as described above was open and notorious in the Station and amongst Station personnel, but as I have stated, no one did anything. The common response was that we all needed to "protect the quarterback," meaning Ferguson.

Received by EEOC CDO 12/30/2020

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 6 of 8

7.     The Station's management's utter and continuing failure to do anything about my complaints, along with Steal's insistence to protect Ferguson as opposed to stopping Ferguson's abusive and hostile behavior, caused me great emotional harm.

8.     On October 2, 2020, I notified the Station I could not renew my contract with the Station when it expired at the end of 2020 unless the Station put an end to the constant harassment by Ferguson.   I did not receive the assurance I was seeking and in fact, Ferguson's conduct became worse.

9.     In early November 2020, I asked for two weeks' vacation because I needed a break from the constant harassment at work.  Almost immediately, in the week before I could take my vacation, Ferguson, who knew I had been complaining about him, intensified his harassment of me.  While we were broadcasting on the air, Ferguson increased his efforts to sabotage my performance by ignoring me, leaving me out of segments or bits, refusing to say my name, and openly mocking me.  His treatment was on-air and broadcasted to all our listeners, and it devastated me emotionally and jeopardized my career.

10.     The Station knew Ferguson was escalating his mistreatment of me, which I allege to be unlawful retaliation because Ferguson knew I had been complaining about him, yet the Station did nothing.

11.     On November 24, 2020, while I was on vacation, I emailed Elizabeth Luptak (who worked Public Affairs for Hubbard Chicago, LLC and doubles as HR for the Station) a comprehensive list describing Ferguson's harassment and the hostile working environment I was enduring**.**  Luptak, acting as the Station HR, sent my complaint to Hubbard Chicago's HR department at the corporate headquarters in Minnesota.  A copy of my written complaint is submitted as **Exhibit One** (with the names of coworkers redacted).

12.     Shortly before Thanksgiving 2020, the Station placed me on leave of absence (actually an extension of my vacation) while claiming it would investigate my charge; but also said I would be back on the air after the following Tuesday (meaning Wednesday, December 2, 2020 or later).

13.     The Station's claim to be sincerely investigating my claims with the intent to bring me back on the air was a lie.  While I was allegedly on a short leave of absence, the Station began the process of "rebranding" to remove my name from the show, which placed me in a false and unfavorable light with the listening audience.

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 7 of 8

And the Station did not commit to taking any actions to protect me from the unbearable misconduct I had accurately described, not only in my November 24, 2020 email but in hundreds of conversations over the years with Station management and my supervisors.

14.     By December 3, 2020, through one of my attorneys, I made it clear to the Station and the Company's HR and legal representative I could not and would not return to the Station unless I had adequate assurance there would be no further harassment, hostile work environment, or any other unlawful conduct by Eric Ferguson or anyone else.  I did not receive this assurance and was not invited back on the air.

15.     On or about December 16, 2020, the Station publicly announced I was not renewing my contract and leaving the Station. The Station's public comments were false and defamatory as they did not state the true reasons for my being off the air and my imminent departure.

16.     I allege that my being taken off the air following my complaints about Ferguson and imminent departure from The Mix is a constructive termination because:

a. My many complaints to the Station's management personnel and my complaint to the Company's HR department were ignored or not treated seriously, and my complaints caused the Company to retaliate against me by allowing my workplace to become unbearable.

b. The Station's failure to stop Ferguson from mistreating me despite my formal complaint to the Company (after hundreds of complaints within the Station) confirmed my worst fears:  That the Company will protect Ferguson no matter how outrageous his conduct becomes.

c. The Station made it very clear there was nothing I could do to stop Ferguson from continuing to harass me if I tried to return to the Station. The situation as of my last work day had become unbearable to the point no reasonable person in my position, through no fault of my own, could continue to work at The Mix.

17.     In summary, I have been continuously discriminated against because of my gender and forced to endure an unbearably hostile work environment and

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

Statement of Particulars by Charging Party (Melissa McGurren)
In the United States Equal Employment Opportunity Commission (Chicago)
December 30, 2020
Page 8 of 8

unlawful retaliation (culminating in constructive termination) all in violation of Title
VII of the Civil Rights Act of 1964, as amended; and also allege a violation of the ADA
(paragraph 4).

18.     I have suffered substantial emotional distress because of the Title VII
and ADA violations I allege.  I have sought treatment through therapy.

19.     I seek front pay due to my loss of income because of constructive
termination.

20.     I also seek backpay because, on information and belief, the Station
underpaid me and other women over the years as a direct consequence of the hostility
towards women that the Station tolerated and therefore encouraged.  I believe I was
underpaid compared to men in similar or comparable positions; and also as part of
the retaliation against me for complaining about Ferguson.

21.     I seek all other damages and other relief available under law.

_____           12 / 30 / 2020
                                           _____

Charging Party, Melissa McGurren           Dated December 30, 2020

Doc ID: 1344908b678f357acf7c3cfbd89ad0fbc3875e20

# <u>Exhibit 1</u>

# Exhibit
# Intentionally Removed

# Exhibit 3

McGurren Arbitration Demand

# Exhibit
# <u>Intentionally Removed</u>

# **Exhibit 4**

McGurren Arbitration Demand

# Exhibit
# <u>Intentionally Removed</u>